No. 95.—BAKER & HART, plaintiffs in error, *vs.* THOMAS T. NAPPIER and WIFE, defendants in error.

[1.] There were two firms, in one of which the members were Kilgrow & Price; in the other, Kilgrow & Patillo. A merchant sold to Kilgrow certain goods, and sought to hold the firm in which Price was a member, liable for the goods: *Held,* that he could do so, although Kilgrow might have intended the goods for the other firm, provided he really thought that Kilgrow was acting for the firm in which Price was a member, and the goods were suitable for that firm—the merchant having first used ordinary care, to find out which it was Kilgrow was acting for.

Assumpsit, in Whitfield Superior Court. Tried before Judge TRIPPE, October Term, 1855.

This was an action brought against Thomas T. Nappier and his wife, formerly Mrs. Price, on an open account for articles sold before her marriage, to her and one E. W. Kilgrow, with whom she was in partnership in keeping a hotel. The following is the testimony in the cause:

WILLIAM L. WHITMAN testified, that he was living in Dalton in 1849, and was a clerk in the store of Mr. Cunningham. E. W. Kilgrow & Mrs. Celia Price were in partnership in the hotel in that place. They purchased goods at the store of Mr. Cunningham for the hotel, and they were charged to E. W. Kilgrow & Co.; that he, witness, boarded at the hotel, and his board there, was paid by the account made at Mr. Cunningham's store, by E. W. Kilgrow & Co.; he never saw any brandy, candy or cider used at the hotel;

they did use such articles at the hotel, as contained in the account, except the three mentioned—brandy, cider and candy; these may have been used at the hotel, but he never saw them used; he never saw any soda biscuit used at the hotel.

Copy of the answers of Theodore D. Caswell, to interrogatories which were read in evidence on the trial:

That he knows the plaintiffs, but not the defendants; that he does know that the plaintiffs sold goods to E. W. Kilgrow & Co. in the year 1849. It was on the twenty-fifth of June, in that year, that the articles were sold, namely: one barrel of sugar, one bag rio coffee, $\frac{1}{2}$ barrel of crush sugar, box adamant. candles, one box candy, one barrel cider, one box tea, $\frac{1}{4}$ barrel rice, one box soda biscuit, $\frac{3}{4}$ dozen (gallons) pickles, 25 ℔ almonds, ten galls. fine brandy, one auction bell, which goods were shipped by the Georgia Rail Road to said E. W. Kilgrow & Co. at Dalton, Georgia; that he annexed to these interrogatories a true copy of the account for the goods so sold by plaintiffs to E. W. Kilgrow & Co. in 1849. (This account annexed is precisely the same as the account sued on.) Witness says that he has carefully examined said copy of account so annexed, and the correct prices of each article, as therein stated, and that the goods aforesaid were, at that time, well worth the prices severally attached to them in said copy account. Witness says that credit of six dollars and a half is to be allowed on said account, for board of plaintiffs in September of that year; that he hereto annexes the original receipts, showing said goods were sent to E. W. Kilgrow & Co. The annexed receipts (two in number) were signed by James Simmons, who was, at that time, the receiving clerk of the Georgia Rail Road & Banking Company at Augusta, Georgia. Witness says he knows said Simmons signed said receipts, because said Simmons personally, after annexing said receipts, acknowledged that fact to witness. Witness knows no more in favor of plaintiff, except that no part of said account has been paid; nor is there any other credit

that witness knows of, except the items for board above named, which ought to be allowed against said account.

The two receipts named and referred to in the foregoing testimony, were given by Georgia Rail Road agent to Baker & Hart, for the articles sued for, and dated June 25th, 1849, showing that the goods were marked E. W. Kilgrow & Co. Dalton, and signed Simmons, agent.

The answer of William Gordon to interrogatories which were read in evidence on the trial: That he knows James B. Hart, one of the plaintiffs, and the defendants; I presented a copy of the annexed account to Mrs. Celia Price, now Mrs. Celia Nappier, on or about the first day of September, 1849, in Dalton, the place where she then lived, and she referred me to Elias W. Kilgrow, her partner in the hotel, for settlement; and he, Kilgrow, stated that the account was just and true, and that it was for articles furnished by the plaintiffs for himself and Mrs. Price, now Mrs. Nappier, in keeping said Hotel. The firm name of Mrs. Celia Price, now Mrs. Celia Nappier, & E. W. Kilgrow, in keeping the hotel, was, I think, Mrs. Celia Price & E. W. Kilgrow; I think that was their firm name, or their sign board; but they purchased articles, at times, that were charged to E. W. Kilgrow & Co. and paid for them; they were engaged in keeping hotel in Dalton in said State; the partnership was dissolved in the latter part of the year 1849, by the intermarriage of Mrs. Celia Price with Thomas T. Nappier, which marriage took place in the latter part of the year 1849. The reason why I presented the account to her was, when I went to have the account settled, she was the first I saw in the house, Kilgrow not being in the house at the time. I stated to her that it was an account against her and Mr. Kilgrow; I did not read over the items in said account to her; she neither stated that it was just or unjust, true or false, but simply referred me to E. W. Kilgrow for its settlement. Kilgrow was a co-partner in a grocery in Dalton, with a man by the name of Patillo; I do not know that the items in the annexed account were purchased for the grocery; but on the contrary,

Kilgrow informed me that they were purchased for the use of the hotel, in which Mrs. Price, now Mrs. Nappier, and Kilgrow were concerned; Kilgrow and Celia Price had a sign up; I think the names upon the said sign was Mrs. Celia Price and E. W. Kilgrow or E. W. Kilgrow and Mrs. Celia Price. I never heard Mrs. Celia Price say that she was a partner of E. W. Kilgrow & Co. or E. W. Kilgrow and Celia Price; I don't think I ever spoke a dozen words to her in my life. He answers, the firm name of Kilgrow and Patillo was, I think, E. W. Kilgrow & Co. The reason why I did not present said account to E. W. Kilgrow & Co. was this: I was informed by E. W. Kilgrow, one of the defendants, that the articles in the annexed account were furnished for and made use of by E. W. Kilgrow and Mrs. Celia Price, or Mrs. Celia Price and E. W. Kilgrow. She married shortly after I presented said account, or shortly after it was thought, by a good many, that they (Thomas T. Nappier and Mrs. Price) would marry; and they did marry soon after. I do not think that plaintiffs had any idea that she was going to marry Thomas T. Nappier or any other person, at the time they sent the account up for settlement. (The account referred to in the testimony of William Gordon, as presented to Mrs. Price and E. W. Kilgrow, and acknowldged to be just by him, is the same account sued on.)

The answer of WILLIAM L. HIGH to interrogatories read in evidence on the trial of the cause: He knows the parties in the cause; the plaintiff sent him two accounts, one on Kilgrow & Co. and one on Kilgrow & Patillo. The precise amount of said accounts he does not recollect; but he has a receipt on William Gordon, Esq. who settled the account by note; and his receipt shows a note against Kilgrow & Co. for $137 55. Mrs. Price told him that she was one of the firm of Kilgrow & Co. and give him a horse of her individual property to indemnify him against loss by the firm, upon whom witness had a debt; he gave the accounts, both the accounts on Kilgrow & Patillo, and the account against Kilgrow & Co. to William Gordon, Esq.; does not know precisely upon

whose credit the account was made; thinks it was made upon the credit of E. W. Kilgrow and Mrs. Price, who compose the firm; thinks he received the account about the first of September, 1849; he does not think he called upon any body to settle said account before he gave the same to Gordon. Plaintiffs sent the accounts to witness by mail; has not got the letter before him, and does not know what he said.

### COPY NOTE READ IN EVIDENCE.

$137 55.                         DALTON, Sept. 1st, 1849.

One month after date, we promise, or either of us, to pay Baker & Hart, or bearer, One Hundred and Thirty-seven $\frac{45}{100}$ Dollars, for value received.

E. W. KILGROW,
C. PRICE.

It was shown by the record, that an action had been instituted against Nappier and wife, on the note which had been given for the account, (a joint and several note of E. W. Kilgrow and Celia Price,) to which Mrs. Nappier had entered a plea of *non est factum*, and the action was dismissed.

The testimony being closed, Counsel for plaintiffs requested the Court to charge, "That if Mrs. Price, (now Mrs. Nappier,) was in partnership with E. W. Kilgrow and used the firm name of E. W. Kilgrow & Co. and the goods were bought in their firm name, by either of the firm, the firm are liable, it matters not how or for what purpose the goods were bought and used."

This charge the Court refused to give as requested, but charged, "That if Mrs. Price, now Mrs. Nappier, was in partnership with E. W. Kilgrow, and used the firm name of E. W. Kilgrow & Co. and the goods were bought in the firm name by either of the firm, *for them*, the firm are liable, it matters not for what purpose the goods were bought and used." The Court further charged the Jury, that they must be satisfied, from the evidence, that E. W. Kilgrow and Mrs. Price were not only in partnership in the hotel, but in partnership in this transaction; that if the goods were purchased

for the grocery of Kilgrow & Patillo, or any other firm, Mrs. Nappier is not liable.

The Jury found for defendant, and plaintiffs moved for a new trial, on the ground that the verdict was contrary to the evidence; and on the further grounds, of error in the Court in the refusal to charge as requested, and in the charges given as above.

The motion for a new trial was refused, and this decision is assigned as error.

AKIN ; HULL, for plaintiffs in error.

UNDERWOOD, for defendants.

*By the Court.*—BENNING, J. delivering the opinion.

[1.] It appears that there were two partnerships, one of which was engaged in the "hotel business," and was composed of Kilgrow and Mrs. Price; the other of which was engaged in the "grocery business," and was composed of Kilgrow & Patillo. It is somewhat doubtful whether either partnership had a well settled firm name, or whether each did not sometimes use or recognize the name of E. W. Kilgrow & Co. as its own.

The charge of the Court amounted to this : that unless it was the intention of the *purchaser* of the goods, (Kilgrow,) that the purchase should be for that firm of which Mrs. Price was a member, Mrs. Price was not bound to pay for them. The charge does not take into the account the question, which partnership it was to which the *sellers* intended the sale to be. And yet, that, perhaps, was the most important question of all.

If the sellers of the goods really thought, when selling them, that they were selling them, not to the firm in which Patillo was a member, but to that in which Mrs. Price was a member, then Mrs. Price was bound to pay for the goods, provided they were such as were suitable to the business of

the partnership in which she was a member, even although Kilgrow, the partner, to whom they may have been sold, intended the goods for the other partnership, and the other partnership obtained them, unless the sellers knew, or might by the use of ordinary care have known, that this was the intention of Kilgrow.

One partner has the power to bind the partnership, in things within the scope of the partnership; and "where one of two innocent persons must suffer by the act of a third person, he shall suffer who has been the cause or occasion of the confidence and credit reposed in such third person." (*Sto. on Part.* §168.)

But a merchant, in dealing with a person known to him to be a member of two different firms, and in respect to goods suitable to either firm, would, in general, be in the exercise of no more than ordinary care, if he called on that person to know which was the firm he was dealing for. And if, without making any such inquiry, the merchant should sell the person the goods, thinking him to be acting for one firm when he was acting for the other, the merchant could, in general, hold only the firm for which the person was really acting liable.

This is said, of course, on the assumption that the person says or does nothing calculated to make the merchant believe him to be acting for the firm for which he, in reality, is not acting.

The charge of the Court, therefore, we think lacked fulness. We think it should have been this: that if Baker & Hart, after taking reasonable care to find out which firm Kilgrow was dealing for, really thought he was dealing for that in which Mrs. Price was a member, and so sold him the goods, intending them for that firm; and if the goods were adapted to the business of that firm, then that firm was liable to pay for the goods, although Kilgrow, in truth, intended them for the other firm, and although they went into the other firm.